EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Félix Albert Rodríguez, Lydia García Peña y la Sociedad Legal de Gananciales<br><br>Recurridos<br><br>v.<br><br>Integrand Assurance Company<br><br>Peticionaria | Certiorari<br><br>2016 TSPR 195<br><br>196 DPR ____ |

Número del Caso: CC-2014-826


Fecha: 9 de septiembre de 2016


Tribunal de Apelaciones:

     Región Judicial de San Juan, Panel III


 Abogada de la parte Peticionaria:

     Lcda. Gaudelyn Sánchez Mejías


 Abogado de la parte Recurrida:

     Lcdo. Guillermo J. Deguzmán


Materia: Derecho de Seguros – Oponibilidad de la defensa de falta de notificación o notificación tardía en una póliza de ocurrencia cuando un tercero perjudicado entabló una acción directa contra la compañía aseguradora luego de obtener una Sentencia final y firme contra el asegurado

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Félix Albert Rodríguez,
Lydia García Peña y
la Sociedad Legal de Gananciales

 Recurridos

   v.       CC-2014-826  Certiorari

Integrand Assurance Company

 Peticionaria

Opinión del Tribunal emitida por el Juez Asociado señor Estrella Martínez

San Juan, Puerto Rico, a 9 de septiembre de 2016.

Nos corresponde dilucidar si en una póliza de ocurrencia (*occurrence policy*) la defensa de falta de notificación o notificación tardía es oponible por una compañía aseguradora frente a un tercero perjudicado que entabló una acción directa contra ésta luego de obtener una sentencia final y firme contra el asegurado.

**I**

Los hechos que originan la controversia ante nuestra consideración, según estipulados, se remontan al 1 de mayo de 2003 cuando La Cumbre, S.E., presentó una demanda de daños y perjuicios contra Félix Albert Rodríguez y Lydia García Peña (esposos Albert-García), en la cual alegaron

que éstos obstruyeron unas tuberías de aguas pluviales instaladas para la construcción del proyecto La Ciudadela en Guaynabo.[1] Como parte de ese litigio, los esposos Albert-García presentaron una demanda de tercero en contra de FJ Construction Corp. (FJ Construction), reclamando la indemnización de los daños y perjuicios causados por las actuaciones negligentes de ésta durante la construcción de La Ciudadela. Asimismo, FJ Construction presentó una reconvención contra los esposos Albert-García.

Luego de varios incidentes procesales, y algunos días antes del comienzo del juicio, FJ Construction le informó solamente a los esposos Albert-García sobre la existencia de una póliza de seguro de responsabilidad civil, pero no se la proveyó. Como cuestión de hecho, ninguna de las partes incluyó a Integrand Assurance Company (Integrand) en el pleito ni se le notificó de la acción instada contra FJ Construction. Una vez comenzado el juicio en su fondo, tanto FJ Construction, como los esposos Albert-García, presentaron la prueba correspondiente, incluyendo documentos, fotografías, testigos y peritos. Luego de auscultar y sopesar la prueba sometida por ambas partes, el Tribunal de Primera Instancia dictó la Sentencia del 26 de febrero de 2009, notificada el 12 de marzo de 2009, declarando con lugar

---

[1]Las reclamaciones de La Cumbre, S.E. contra los esposos Albert-García fueron objeto de un acuerdo de transacción.

la demanda contra tercero presentada por los esposos Albert-García y condenó a FJ Construction a pagar $100,000 por concepto de daños y perjuicios. Igualmente, desestimó la reconvención presentada por FJ Construction contra los esposos Albert-García, imponiendo el pago de $10,000 en honorarios de abogado por temeridad. Así, FJ Construction presentó un recurso de apelación ante el Tribunal de Apelaciones. Éste confirmó la sentencia del Tribunal de Primera Instancia. La Sentencia del Tribunal de Apelaciones advino final y firme el 15 de enero de 2010.[2]

Posteriormente, los esposos Albert-García recibieron la póliza de ocurrencia emitida por Integrand a favor de FJ Construction y, alrededor de mayo de 2010, efectuaron una reclamación extrajudicial por escrito a Integrand para solicitarle el pago de los $100,000, en virtud de la sentencia obtenida en contra de su asegurado, FJ Construction. Integrand nunca respondió la reclamación extrajudicial de los esposos Albert-García. Por ende, éstos instaron la demanda ante nuestra consideración contra Integrand, como asegurador de FJ Construction, para el cobro de la sentencia final y firme en contra de su asegurado.

Ante esto, Integrand contestó la demanda alegando que no responde como asegurador, pues nunca se le

---

[2]Las partes no han cuestionado la sentencia del Tribunal de Apelaciones. Por ende, ésta constituye cosa juzgada y no está ante nuestra consideración.

notificó sobre el pleito entre los esposos Albert-García y FJ Construction aduciendo que así lo requería la póliza emitida. En lo pertinente, alegó que la póliza de seguro, expedida por Integrand a favor de FJ Construction, le impone al asegurado el deber de notificar al asegurador sobre cualquier suceso que pueda activar su responsabilidad, incluyendo la presentación de una reclamación o demanda en contra del asegurado. Asimismo, plantearon que el contrato de seguro suscrito provee que ninguna persona podrá reclamar indemnización, según la póliza de seguros, a no ser que el asegurado cumpla con todas las condiciones del contrato. Por tanto, Integrand sostuvo que procede desestimar la demanda presentada por los esposos Albert-García debido al incumplimiento con los términos de la póliza, ya que fue notificada tardíamente de la demanda contra su asegurado y los reclamantes se colocan en la misma posición y deberes de FJ Construction.

En este contexto, Integrand alegó que estas cláusulas tienen el propósito de facilitar la investigación ante un incidente cubierto por la póliza de seguro, de modo tal que se pueda proveer una defensa adecuada ante los tribunales.[3] Asimismo, sostuvo que el

---

[3] Entre sus contenciones, Integrand señaló ante el Tribunal de Primera Instancia que el incumplimiento con la notificación le impidió realizar una investigación exhaustiva de los hechos, descubrir evidencia documental y testifical, recopilar fotografías del lugar de los hechos y de los alegados daños, incorporar a terceros que pudieran responder a los demandantes y hacer una

incumplimiento con la notificación requerida le ocasionó irreparables daños y perjuicios.

Por su parte, los esposos Albert-García sostuvieron que el Artículo 20.030 del Código de Seguros, *infra*, provee para la acción directa contra Integrand como asegurador de FJ Construction. Por ende, alegaron que la defensa de falta de notificación sólo procede cuando se demuestre que tal incumplimiento causó un perjuicio sustancial al asegurador. Los esposos Albert-García señalaron que Integrand no demostró haber sufrido un perjuicio sustancial a causa de la falta de notificación, que impida el cobro de la póliza, sino que sólo se limitó a argumentar situaciones hipotéticas.

Examinadas las posturas de las partes, el Tribunal de Primera Instancia dictó Sentencia y declaró sin lugar la demanda de los esposos Albert-García contra Integrand. El foro primario expresó que cuando un perjudicado entabla una acción directa contra un asegurador, éste puede oponer las mismas defensas que podría invocar contra el asegurado, siendo la falta de notificación una de ellas. Mediante un "balance de intereses", el Tribunal de Primera Instancia concluyó que Integrand quedó en un "estado de indefensión absoluta" cuando los perjudicados no subsanaron la falta

oferta de transacción. Además, reclamó que se le menoscabó su derecho de asumir representación legal. A su vez, señaló que esa falta de notificación le expone a satisfacer intereses post-sentencia acumulados desde el dictamen.

de notificación de FJ Construction, a pesar de que conocían de la existencia de una póliza antes del juicio contra FJ Construction.[4] Así, el foro primario determinó que la falta de notificación por parte de los perjudicados le ocasionó daños sustanciales al asegurador.

Inconformes con la decisión, los esposos Albert-García presentaron una reconsideración ante el foro primario, la cual fue declarada no ha lugar, por lo que acudieron ante el Tribunal de Apelaciones mediante un recurso de apelación. Éste revocó al Tribunal de Primera Instancia. El Tribunal de Apelaciones indicó que mediante la acción directa del perjudicado se activa una responsabilidad sustantiva absoluta del asegurador en beneficio del tercero perjudicado. En consecuencia, concluyó que Integrand no podía oponer la defensa de falta de notificación contra los esposos Albert-García, ya que las cláusulas de notificación sólo se pueden oponer cuando se demanda al asegurado y asegurador conjuntamente. Además, según el Tribunal de Apelaciones, la política pública detrás de las acciones directas instadas al amparo del Código de Seguros exige que la responsabilidad de las aseguradoras se determine a partir de si la póliza cubre el riesgo o no.[5]

---

[4]Véase, Sentencia del Tribunal de Primera Instancia de 30 de septiembre de 2011, Apéndice del *certiorari*, pág. 244.

[5]Véase, Sentencia del Tribunal de Apelaciones, Apéndice del *certiorari*, págs. 303-304.

Así las cosas, Integrand presentó oportunamente el recurso de *certiorari* ante nuestra consideración. En síntesis, señaló que el Tribunal de Apelaciones erró al determinar que la defensa de notificación tardía es inoponible a los esposos Albert-García y concluir que responde de forma absoluta, según la póliza de seguro emitida a favor de FJ Construction.

El 30 de enero de 2015 expedimos el recurso ante nuestra consideración y tras examinar los escritos de los comparecientes, procedemos a discutir el derecho aplicable y resolver la controversia.

## II

En Puerto Rico, la industria de seguros es una sumamente importante, por lo que las controversias relacionadas con la figura del contrato de seguros revisten un interés público y se han resuelto al amparo de las disposiciones del Código de Seguros y su jurisprudencia interpretativa, considerando al Código Civil como fuente de derecho supletorio. Jiménez López *et al.* v. SIMED, 180 DPR 1, 8 (2010); Mun. of San Juan v. Great Ame. Ins. Co., 117 DPR 632, 635 (1986). Asimismo, a tono con los orígenes del Código de Seguros, este Tribunal ha recurrido a las normas más avanzadas del derecho civil y derecho angloamericano por su valor persuasivo. CSMPR v. Carlo Marrero *et als.*, 182 DPR 411, 424 (2011).

Al considerar lo anterior, la controversia ante este Tribunal requiere un examen integral de las disposiciones del Código de Seguros de Puerto Rico vigente, Ley Núm. 77 de 19 de junio de 1957, 26 LPRA secs. 101 *et seq.*, relacionadas con la responsabilidad del asegurador, según una póliza de seguro, frente a un tercero perjudicado por los actos u omisiones del asegurado. Específicamente, el desarrollo de las normas relacionadas con los Art. 20.010 y 20.030 del Código de Seguros, 26 LPRA secs. 2001 y 2003, respectivamente. Mientras el Artículo 20.010, *supra*, atiende el carácter de la responsabilidad de un asegurador, el Artículo 20.030 del Código de Seguros, *supra*, establece los principios que rigen las reclamaciones de un tercero, según la cubierta de una póliza de seguro.

Para comprender el alcance de los citados artículos es necesario examinar el origen de estas disposiciones. Inicialmente, en Puerto Rico un asegurador podía ser demandado en dos formas: (1) por demanda contra el asegurador únicamente luego de haber el demandante obtenido sentencia final contra el asegurado; o (2) incluyendo al asegurado y al asegurador en la misma demanda. Véanse, Pérez v. Maryland Casualty Company, 78 DPR 475, 478 (1955); Bithorn v. Santana, 68 DPR 300 (1948); United States Casualty Co. v. Corte, 66 DPR 937, 939 (1947). Posteriormente, en 1952 se aprobó la Ley Núm. 60 para permitir interponer una demanda contra la

compañía aseguradora únicamente, sin necesidad de esperar a que recayera sentencia final contra el asegurado o incluirla como codemandada. Tal enmienda generó una discusión sobre si la aprobación de la Ley Núm. 60 tuvo el efecto de crear una causa de acción (sustantiva) contra la aseguradora o si simplemente era una medida meramente procesal. Pérez v. Maryland Casualty Company, *supra*, pág. 479. En aquel entonces, este Tribunal expresó que el historial legislativo de la referida enmienda **no** reflejaba la intención de la Asamblea Legislativa de crear "una causa de acción separada y distinta contra el asegurador", como existía en el estado de Louisiana, por lo que se concluyó que las enmiendas a las disposiciones de la Ley de Seguros sólo consistieron en cambios al procedimiento. Íd., págs. 480-481.[6] Véase, además, Landol v. Colón, 78 DPR 602, 604 (1955); Autoridad de las Fuentes Fluviales v. Irizarry, 72 DPR 644, 650 (1951).

La norma pautada conllevó serias consecuencias para los perjudicados quienes se veían imposibilitados de recibir resarcimiento de daños por tecnicismos de ley, la ausencia del asegurado de la jurisdicción o por algún

---

[6]Esta postura se refleja en las decisiones de este Tribunal en las que resalta el hecho de que la aseguradora se incluía como parte del pleito contra su asegurado. Véanse, Lafontaine v. Municipio de Río Grande, 79 DPR 583 (1956); Landol v. Colón, 78 DPR 602 (1955); Pérez v. Maryland Casualty Company, 78 DPR 475 (1955); Faulkner v. Nieves, 76 DPR 434 (1954); Colón v. Gobierno de la Capital de P.R., 62 DPR 25 (1943).

otro motivo que prescribiera su causa de acción. *Véanse*:

Landol v. Colón, *supra*; Pérez v. Maryland Casualty

Company, *supra*; Autoridad de las Fuentes Fluviales v.

Irizarry, *supra*. Para atender esta situación, se aprobó

en el 1957 el Código de Seguros, *supra*, con los

artículos objeto de estudio.[7]

Así, el Artículo 20.010 del Código de Seguros,
*supra*, dispone actualmente que "**[e]l asegurador** que

expidiere una póliza asegurando a una persona contra

daños o perjuicios, por causa de responsabilidad legal

por lesiones corporales, muerte o daños a la propiedad

de una tercera persona, **será responsable cuando**

**ocurriere una pérdida cubierta por dicha póliza**, y el

pago de dicha pérdida por el asegurador **hasta el grado**

**de su responsabilidad por la misma, con arreglo a la**

**póliza**, no dependerá del pago que efectúe el asegurado

en virtud de sentencia firme dictada contra él con

motivo del suceso, ni dependerá de dicha sentencia".
Énfasis suplido.

Por otro lado, y cónsono con el Artículo 20.010 del

Código de Seguros, *supra*, el Artículo 20.030 del Código

de Seguros, *supra*, provee que: "[l]a persona que

sufriere los daños y perjuicios tendrá, a su opción, una

---

[7]Este Tribunal en Landol v. Colón, *supra*, advirtió
que el estado de derecho vigente funcionaba
injustamente al privar a un perjudicado de una causa de
acción que de otro modo sería válida. A su vez, señaló
que le competía a la Asamblea Legislativa establecer
una doctrina germana a la de Louisiana. Íd, pag. 605,
esc. 1.

acción directa contra el **asegurador conforme a los términos y limitaciones de la póliza, acción que podrá ejercitar contra el asegurador solamente o contra éste y el asegurado conjuntamente**". (Énfasis suplido). Ahora bien, esta acción está "**sujeta a las condiciones de la póliza o contrato y a las defensas que pudieran alegarse por el asegurador en acción directa instada por el asegurado**". (Énfasis suplido). Igualmente, si el tercero perjudicado entabla una demanda solo en contra del asegurado, "no se estimará por ello que se le prive, **subrogándose en los derechos del asegurado con arreglo a la póliza**, del derecho de sostener acción contra el asegurador y cobrarle luego de obtener sentencia firme contra el asegurado". Íd. (Enfásis suplido).

Con tales cambios, se generó una responsabilidad del asegurador hacia el perjudicado en aquellas situaciones en que ocurre una pérdida cubierta por la póliza de seguro, que no depende de alguna sentencia dictada por un tribunal en contra del asegurado o de algún pago de sentencia efectuado por éste. Trigo v. The Travelers Ins. Co., 91 DPR 868, 874-875 (1965). De esta forma, se introdujo la acción directa (*direct action)* contra el asegurador existente en la legislación de Lousiana.[8] Claro está, esa acción directa está sujeta "a

---

[8]En ese momento, el estatuto de Louisiana reconocía a la parte perjudicada el derecho de entablar una reclamación contra el asegurador directamente. La política pública enmarcada consistía en que una póliza de seguro no se emite primariamente para la protección

los términos mismos y limitaciones de la póliza", lo que implica que el acto debe estar cubierto por la póliza. Las expresiones al aprobar la referida legislación fueron contundentes con relación a la política pública acogida de brindar a las personas que reciban daño el derecho legítimo a recibir resarcimiento. Trigo v. The Travelers Ins. Co., *supra*, págs. 875-877. De igual manera, se alteró el estado de derecho vigente **antes** de 1957 reconociendo que un tercero perjudicado puede solicitar indemnización por sus agravios al asegurador solamente y que su derecho no está predicado en la acción contra el asegurado. Íd., págs. 874-875.[9]

Por tal razón, más allá de los mecanismos procesales que pudiesen existir, en Puerto Rico se reconoció una causa de acción a favor de un tercero

---

del asegurado, sino para la protección del público. Véanse, Davis v. Consolidated Underwriters, 6 So. 2d 351, 357 (La. 1942). Advertimos que la legislación de Louisiana sobre la acción directa ha sido objeto de enmiendas y en la actualidad permite entablar un pleito contra la aseguradora como única parte demandada en seis supuestos, a saber: (1) el asegurado se declaró en quiebra o comenzó un proceso a estos efectos en una corte competente; (2) el asegurado es insolvente; (3) el asegurado no puede ser emplazado o localizado; (4) la causa de acción es por daños como resultado de una ofensa entre hijos y sus padres, o entre personas casadas; (5) el asegurado es un transportista motorista no asegurado; y (6) el asegurado ha fallecido. Véanse: LA R.S. 22:1269; Soileau v. Smith True Value and Rental, 144 So. 3d 771 (La. 2013).

[9] Por ello, en Trigo v. The Traveleres, Ins. Co., 91 DPR 868 (1965) contrario a lo resuelto en Cruz v. González, 66 DPR 212 (1946), se estableció que aunque la causa de acción estuviere prescrita contra el asegurado, ello no implica que esté también prescrita contra la aseguradora.

perjudicado y en contra del asegurador, como cuestión de derecho *sustantivo*, la cual es distinta y separada de la causa de acción que pudiese tener ese tercero contra el asegurado. En vista de lo anterior, hemos expresado que la persona que alega que ha sufrido daños y perjuicios causados por las acciones u omisiones culposas o negligentes de un asegurado puede orientar su causa de acción de tres formas distintas: (1) demandar al asegurador; (2) demandar al asegurado, o (3) demandar al asegurado y su asegurador conjuntamente. Neptune Packing Corp. v. Wackenhut Corp., 120 DPR 283, 289 (1988). Igualmente, si la persona que ha sufrido los daños dirige su causa de acción en contra del asegurado y obtiene una sentencia final y firme en contra de éste, el perjudicado podría instar una acción posteriormente en contra del asegurador para exigir el pago de la sentencia. Íd., págs. 289-290; Ruiz v. New York Dept. Stores, 146 DPR 353, 367-368 (1998).

No obstante, el Artículo 20.030 del Código de Seguros, *supra*, sujeta la acción a las condiciones de la póliza de seguros, por lo que hemos interpretado que esto se refiere a que la responsabilidad del asegurador no será mayor que la pactada en la póliza de seguro ni surgirá en caso de que el asegurado no haya incurrido en actos u omisiones culposas o negligentes. Trigo v. The Travelers Ins. Co., *supra*, pág. 875. En cuanto a las defensas que el asegurador puede interponer frente al

tercero perjudicado, en García v. Northern Assurance Co., 92 DPR 245 (1965), expresamos que un asegurador no puede oponer aquellas **defensas personales** que le corresponden al asegurado. Íd., págs. 254-255 citando a Lumbermen's Mut. Cas. Co. v. Elbert, 348 U.S. 48 (1954), entre otros. A tono con esto, resolvimos que un asegurador no puede oponer la defensa de falta de notificación a un municipio dentro de los 90 días requeridos por las leyes aplicables a las reclamaciones contra municipios entonces vigentes, ya que esta defensa sólo le beneficiaba al Municipio por disposición de ley. Íd., pág. 251.

A tono con la normativa enunciada, la Asamblea Legislativa enmendó el Artículo 20.030 del Código de Seguros, *supra*, mediante la Ley Núm. 186-2007 para aclarar que en la "acción directa incoada por la persona que sufriere los daños y perjuicios contra el asegurador, éste está impedido de interponer aquellas defensas del asegurado basadas en la protección de la unidad de la familia u otras inmunidades similares que estén reconocidas en el ordenamiento jurídico de Puerto Rico". Con ello, se incorporó lo resuelto en Drahus v. Nationwide Mutual Ins. Co., 104 DPR 60 (1975). Cabe destacar que la Ley Núm. 186-2007 no cambió la naturaleza sustantiva de la acción, es decir, aún el tercero perjudicado puede entablar directamente su reclamo contra el asegurador solamente. Ahora bien,

según el historial legislativo de la referida ley, no procede una interpretación que pretenda imputar responsabilidad absoluta al asegurador aún en ausencia de negligencia o culpa del asegurado. *Véase* Comisión de lo Jurídico, Informe Positivo sobre el P. de la C. 3637, Senado de Puerto Rico, 22 de octubre de 2007; Comisión de Hacienda y Asuntos Financieros, Informe Positivo sobre el P. de la C. 3637, Cámara de Representantes, 31 de agosto de 2007. Por tal razón, esta enmienda no alteró el estado de derecho vigente, pues ya desde el 1962 indicamos que el asegurador sólo será responsable, según una póliza de seguros de responsabilidad civil, si el asegurado ha sido culposo o negligente. *Véase* Almonte de Mejía v. Díaz, 86 DPR 111 (1962).

Lo anterior refleja que nuestro Código de Seguros establece una política pública diseñada para permitir que un tercero perjudicado pueda reclamarle **directamente** a un asegurador, según una póliza de seguro mediante una acción de naturaleza sustantiva, distinta y separada de la que pudiera corresponder en contra del asegurado. Al igual que el estatuto de Louisiana, se trata de un andamiaje jurídico inspirado en consideraciones de interés público y atados a la protección de terceros perjudicados por la conducta de un asegurado. *Véase* H. Alston Johnson, Article: The Louisiana Direct Action Statute, 43 La. L. Rev. 1455, 1457-1458 (1983).

Es en este marco de la acción directa, sujeta a los términos y limitaciones de la póliza, que nos corresponde auscultar si la defensa de notificación tardía al asegurador se puede oponer a terceros perjudicados y, de ser oponible, qué parámetros han de regir su aplicación. Procedemos.

**III**

A.

En el ámbito que nos ocupa, es sabido que virtualmente todos los contratos de seguros contienen cláusulas contractuales que le imponen ciertos deberes al asegurado para con el asegurador. Por un lado, estas cláusulas contractuales usualmente exigen la cooperación del asegurado durante la fase investigativa del suceso detonante de la cubierta de la póliza de seguro. Por otro lado, el asegurado comúnmente tiene el deber contractual de notificar al asegurador sobre cualquier suceso, reclamación o demanda que active la responsabilidad indemnizatoria de éste, según determinada póliza de seguro. *Véase* Lcdo. Rolando Cruz, Derecho de Seguros, San Juan, Publicaciones JTS, 1999, pág. 183; 8f-198 Appleman on Insurance secs. 4731 y 4771. Ambos deberes contractuales se encuentran intrínsecamente relacionados entre sí y persiguen un fin similar. *Véase* Mun. of San Juan v. Great Ame. Ins. Co., *supra*, pág. 637.

Esencialmente, el requisito de notificación al asegurador tiene el propósito de facilitarle a éste la investigación correspondiente del suceso, reclamación o demanda por la cual se solicita la cubierta de la póliza, así como la preparación de sus defensas. *Véase* Faulkner v. Nieves, 76 DPR 434, 439-440 (1954). Así, el ex Comisionado de Seguros, Lcdo. Rolando Cruz nos explica que una investigación adecuada del suceso cubierto por la póliza de seguro reduce el riesgo del asegurador ante reclamaciones fraudulentas, fomenta las transacciones de reclamaciones y evita la adjudicación excesiva de daños por parte de un tribunal. Rolando Cruz, op. cit., pág. 182. En ese sentido, nos explica que "[e]l único efecto jurídico que resultaría del incumplimiento por parte del asegurado de las condiciones obligatorias precedentes de dar aviso de pérdida al asegurador . . . es que dicho incumplimiento **puede constituir una defensa adecuada** para relevar al asegurador de responsabilidad en la póliza". Énfasis suplido. Íd., pág. 181.

B.

Con relación a la oponibilidad de la defensa de notificación tardía frente a un tercero perjudicado, **antes** de aprobarse los Art. 20.010 y 20.030 del Código de Seguros, *supra*, este Tribunal expresó que la defensa de incumplimiento con las condiciones del contrato "puede ser interpuesta por la compañía aseguradora no

solamente contra el asegurado si que también contra el reclamante de una indemnización por perjuicios sufridos por un accidente cubierto por la póliza". Colón v. Gobierno de la Capital, 62 DPR 25, 38 (1943). Incluso, expresamos que "el perjudicado ocupa la misma posición legal del asegurado, salvo en el caso de colusión entre éste y el asegurador". Íd. Por ello, la norma jurídica sostenía que el tercero perjudicado podía protegerse de la defensa de incumplimiento levantada por la aseguradora, al hacerla formar parte de la acción instada, emplazándola y entregando copia de la demanda. Íd., págs. 38-39. Asimismo, se aceptaba que la aseguradora podía renunciar a la defensa de falta de notificación con sus propias actuaciones y se señalaba que la notificación tardía, por sí sola, no era suficiente para liberar a la compañía aseguradora de responsabilidad. Véanse, Cuebas Fernández v. P.R. American Ins. Co., 85 DPR 626, 644 (1962),[10] Lafontaine v. Municipio de Río Grande, 79 DPR 583, 585-586 (1956); Landol v. Colón, 78 DPR 602, 604-605 (1955); Faulkner v. Nieves, *supra*, págs. 438, 440. Inclusive, para que ésta prosperara debía demostrar que el incumplimiento le provocó un daño sustancial.

A pesar de ello, este Tribunal no ha elaborado un estándar ni se ha expresado para delimitar cuándo es

---

[10] Los hechos adjudicados ocurrieron el 26 de junio de 1957 cuando aún no estaba vigente el nuevo Código de Seguros.

oponible la defensa de falta de notificación frente a un tercero perjudicado y cuándo el asegurador está impedido de oponerla tras el reconocimiento del derecho de un tercero perjudicado a instar una acción directamente contra la aseguradora bajo las disposiciones de las enmiendas del Código de Seguros de 1957.[11] Tampoco hemos dilucidado si tal incumplimiento libera al asegurador de responsabilidad frente a un tercero perjudicado.

Nuestra jurisprudencia no ha abundado específicamente en torno a los pormenores de la aplicación de la defensa considerando la política pública establecida por los Art. 20.010 y 20.030 del Código de Seguros. Tras las enmiendas de 1957, y el reconocimiento de que el nuevo estatuto adoptado es sustancialmente idéntico al de Louisiana, nos limitamos a expresar que ello no significa que el asegurador asume una responsabilidad absoluta. Su obligación dependerá de si la póliza cubre el riesgo. García v. Northern Assurance, Co., *supra*, pág. 255. Asimismo dictaminamos, a base de la interpretación del estatuto de Louisiana, que el asegurador está impedido de interponer defensas personales o privativas de su asegurado frente a la

---

[11] Mediante **Sentencia** emitida en Molina v. Ruiz, 113 DPR 287 (1982), este Tribunal se limitó a remitir a una vista plenaria para dilucidar si una aseguradora sufrió daños sustanciales por razón de la notificación tardía. Al así resolver, este Tribunal citó la jurisprudencia elaborada previo a las enmiendas de 1957 al Código de Seguros, sin auscultar si éstas eran de aplicación a la acción directa incorporoda en el nuevo ordenamiento.

reclamación de un tercero perjudicado Íd., pág. 255.[12]

Véase, Lumbermen's Mut. Cas. Co. v. Elbert, 348 US 48

(1954). Sin embargo, no se elaboró una norma y sólo nos

limitamos a sugerir que, "el asegurador está **severamente**

**restringido** de interponer defensas técnicas basadas en

los términos de la póliza, tales como falta de

notificación cuando el perjudicado radica una acción

directa". García v. Northern Assurance Co., *supra*, pág.

251. (Énfasis suplido).

Por consiguiente, para atender la controversia

resulta adecuado remitirnos a la casuística de la

jurisdicción de Louisiana relacionada con la defensa de

falta de notificación interpuesta por la compañía

aseguradora frente a un tercero perjudicado, en el

contexto de la acción directa.


C.

En relación con las pólizas de ocurrencia, el

estatuto de Louisiana, acogido en nuestra legislación,

ha sido objeto de numerosas interpretaciones que

elaboraron la política pública que permea en el

reconocimiento de que un tercero perjudicado pueda

---

[12]En García v. Northern Assurance, Co., 92 DPR 245 (1965) este Tribunal se limitó a resolver que el incumplimiento en notificar al municipio dentro del término de 90 días de ocurrido un accidente previo a la reclamación  de daños y perjuicios no impide que el lesionado interponga una acción directa en daños y perjuicios contra la aseguradora del municipio. Nada se dispuso con relación a si la falta de notificación requerida en la póliza libera al asegurador de responsabilidad frente a un tercero perjudicado.

instar una acción directa contra el asegurador.[13] Véase,
Davies v. Consolidated Underwriters, 6 So. 2d 351 (La.
1942); Edwards v. Fidelity & Casualty Co. of New York,
123 So. 162 (La. Ct. App. 1929). De igual forma, se
desarrolló la jurisprudencia interpretativa en cuanto a
lo que significa "conforme los términos y limitaciones
de la póliza" con relación a la defensa de falta de
notificación o notificación tardía levantada por la
compañía aseguradora frente a un tercero perjudicado.

Específicamente, la Corte Suprema de Louisiana
estableció que cada caso debe ser examinado conforme a
sus hechos y circunstancias particulares. Los tribunales
deben considerar en el balance de intereses el tiempo
entre el suceso reclamado y la notificación, el momento
en que la parte perjudicada descubrió su daño, cuándo
ésta descubrió y conoció la existencia de una póliza y

---

[13]Sabido es que, de ordinario, existen dos tipos de cubiertas de seguros básicas: las de ocurrencia (*occurrence policies*) y las de reclamo presentado (*Claims made and reported policies*). En esencia, en la póliza de reclamo presentado existe cubierta si la reclamación se hace durante el periodo de vigencia de la póliza mientras que en la póliza de ocurrencia sólo depende de que el incidente haya ocurrido en el periodo de vigencia aunque no se haya reclamado. Véanse, Jiménez López *et al.* v. SIMED, 180 DPR 1, 11 (2010); 7 Couch on Insurance, 3d, Sec. 102:22, págs. 66-71 (2013). En cuanto a la póliza de reclamo presentado refiérase a lo resuelto en Gorman v. City of Opelousas, 148 So. 3d 888, 894 (La. 2014). Véase, además, Grant Tolbird, Death in the City: Gorman's Flawed Application of the Direct Action Statute to Insured Political Subdivisions, 76 La. L. Rev. 583 (2015).

la identidad de la compañía aseguradora, el perjuicio causado a la defensa de la compañía aseguradora por el retraso de la notificación, la buena fe del asegurado y del tercero perjudicado, la existencia de circunstancias especiales, el fraude o la colusión. Jackson v. State Farm Mut. Auto. Ins. Co., 29 So. 2d 177, 179 (La. 1946).

Luego, en West v. Monroe Bakery, Inc., 46 So. 2d 122 (La. 1950), la Corte Suprema de Louisiana examinó los distintos pronunciamientos sobre el asunto para concluir tajantemente que la acción directa le confiere un derecho sustantivo a los terceros perjudicados, sujeto solamente a las defensas legales que se puedan levantar contra quien produjo el daño. Íd., pág. 123. Tal derecho está cimentado en que el tercero perjudicado que actúa sin culpa no puede ser responsable por el incumplimiento del acuerdo entre el asegurado y el asegurador. La política pública es a favor de la protección del público. Íd., págs. 129-130. Véase, Gorman v. City of Opelousas, 148 So. 3d 888, 894 (La. 2014). Empero, citó con aprobación lo enunciado en Davies v. Consolidated Underwriters, *supra*, pág. 357, en torno a que el asegurador no está vedado de oponer la defensa de notificación tardía en situaciones "sumamente claras". West v. Monroe Bakery, Inc., *supra*, págs. 129-130.

Estas decisiones contribuyeron a enmarcar la norma jurídica aplicable como un híbrido entre lo enunciado en

West v. Monroe Bakery, Inc., *supra*, y los factores establecidos en Jackson v. State Farm Mut. Auto. Ins. Co., *supra*. Como resultado, el enfoque al dilucidar si procede la defensa de notificación tardía de una aseguradora de una póliza de ocurrencia frente a un tercero perjudicado es caso a caso con el resultado de que la aseguradora se beneficiará de la defensa de falta de notificación en aquellas instancias en las que existe un perjuicio a su defensa o se establece el fraude. Por tanto, la compañía aseguradora estará severamente restringida de oponer estas defensas. H. Alston Johnson, *supra*, págs. 1487-1488. Véase, además, Lumbermen's Mut. Cas. Co. v. Elbert, *supra*, pág. 51.

D.

Conforme a lo expresado, la defensa de notificación tardía o falta de notificación no procede automáticamente contra un tercero perjudicado en una acción directa si se opone como un mero incumplimiento técnico del asegurado, según los términos y condiciones de la póliza de ocurrencia. Esto, ya que la acción directa incorporada en Puerto Rico, más allá de proveer una causa de acción a favor de un perjudicado, se fundamenta en la protección de terceros. *Véase* Davies v. Consol. Underwriters, *supra*. Además, las pólizas de seguros de responsabilidad civil crean vínculos y obligaciones entre el **asegurado** y el **asegurador**, sin que lo pactado imponga deberes en los terceros perjudicados

beneficiarios de la cubierta. *Véase* Art. 1044 del Código Civil, 31 LPRA sec. 2994.

De acuerdo con lo expuesto, los tribunales deben examinar con mayor rigurosidad la procedencia de la defensa de notificación tardía o falta de notificación cuando el asegurador la opone contra el tercero perjudicado que cuando la opone frente al asegurado. Asimismo, lo resuelto en Colón v. Gobierno de la Capital de P.R., *supra*, no aplica a las enmiendas incorporadas en el 1957 al Código de Seguros. Por tanto, un tercero perjudicado no está obligado a notificar al asegurador de la reclamación en contra del asegurado para evitar que proceda la defensa de notificación tardía o falta de notificación. Esto, puesto que las decisiones de este Tribunal fueron resueltas antes de que en Puerto Rico se incorporara la acción directa como un derecho sustantivo de un tercero perjudicado. Además, ello atentaría contra el derecho del tercero perjudicado a entablar una reclamación directa y exclusivamente contra el asegurador. *Véase* Neptune Packing Corp. v. Wackenhut Corp, *supra*, pág. 289.

Por tal razón, resolvemos que cuando el Artículo 20.030 del Código de Seguros, *supra*, crea la acción directa de un tercero perjudicado contra el asegurador y supedita ésta a las condiciones de la póliza, ello no implica que el incumplimiento con la notificación requerida en una póliza de ocurrencia constituya por sí

sola ni automáticamente una defensa oponible frente a un tercero perjudicado. Un asegurador no podrá oponer exitosamente la defensa afirmativa de notificación tardía o falta de notificación frente a un tercero perjudicado en una acción directa instada al amparo del Artículo 20.030 del Código de Seguros, *supra*, **a menos que** el asegurador demuestre **claramente** que tal incumplimiento le causó un daño **sustancial** y **material**, o hubo fraude o colusión. La determinación de si hubo o no un daño sustancial y material causado por el incumplimiento con los requisitos de notificación del asegurado dependerá de los hechos de cada caso, a la luz de la política pública adelantada con la implantación del mecanismo de la acción directa disponible al tercero perjudicado en contra del asegurador.

En resumen, y como hemos examinado, la norma jurídica permite instar una acción reclamando daños únicamente contra la aseguradora. Ésta responde por la póliza de ocurrencia emitida siempre y cuando el incidente por culpa o negligencia del asegurado ocurra dentro del periodo de cubierta de la póliza. Sin embargo, ello no significa que la responsabilidad de la aseguradora sea absoluta frente al asegurado. Como hemos enunciado, el Artículo 20.030 del Código de Seguros, *supra*, dispone que la acción incoada directamente contra el asegurador está sujeta a las condiciones de la póliza o contrato y a las defensas que el asegurador pudiera

alegar contra el asegurado. No se trata de las defensas privativas o personales del asegurado, pero cuando la póliza de ocurrencia contiene una cláusula que requiere la notificación de la acción instada, su incumplimiento es oponible tanto al asegurado como al tercero perjudicado independiente de si la acción fue entablada exclusivamente contra la compañía aseguradora o ésta se hizo formar parte del pleito original. Sin embargo, cuando la defensa de la aseguradora es frente a un tercero perjudicado se examina de forma más restrictiva si ésta procede o no, es decir, en beneficio del tercero perjudicado, por lo que la aseguradora tendrá que demostrar claramente que el incumplimiento le causó un daño sustancial y material, o que medió fraude o colusión. En tal ejercicio, avalamos la política pública a favor del tercero perjudicado para que éste pueda reclamar directamente contra el asegurador y reciba la indemnización que corresponda por la cubierta de la póliza.

**IV**

Los hechos en el caso ante nuestra consideración demuestran que los esposos Albert-García obtuvieron una Sentencia de daños y perjuicios en contra de FJ Construction mediante un pleito donde cada parte presentó prueba testimonial, documental, fotográfica y pericial. Asimismo, FJ Construction presentó un recurso de apelación ante el Tribunal de Apelaciones, en aras de

lograr la revocación del dictamen del Tribunal de Primera Instancia. A pesar de esto, el Tribunal de Apelaciones confirmó al Tribunal de Primera Instancia y la Sentencia en contra de FJ Construction advino final y firme.

A meses de advenir final y firme la Sentencia emitida por el Tribunal de Primera Instancia, los esposos Albert-García reclamaron a Integrand el pago de la cuantía determinada a su favor. Ésta levantó la defensa de incumplimiento con la notificación requerida en la póliza de ocurrencia. Adujo que esto le produjo un perjuicio sustancial, por lo que sostuvo que no procede el pago reclamado. Para atender la interrogante, las partes sometieron conjuntamente una serie de estipulaciones necesarias para que se adjudicara la controversia.

El foro primario resolvió que procedía relevar a Integrand de responsabilidad, al concluir que la falta de notificación por sí sola le causó perjuicio sustancial. Entendió que los esposos Albert-García colocaron a Integrand en un estado de indefensión absoluta cuando no le notificaron en torno al pleito instado contra FJ Construction, a pesar de conocer de la existencia de una póliza.[14] Inconforme, Integrand acudió

---

[14]El Tribunal de Primera Instancia citó dos casos en los que se relevó a la aseguradora de responsabilidad. En ambos casos, la sentencia a favor del tercero perjudicado fue dictada en rebeldía porque ninguno de los asegurados compareció al litigio. Éstos

al Tribunal de Apelaciones y éste revocó al foro primario. El foro apelativo intermedio asumió una postura diametralmente opuesta al foro primario. Concluyó que la defensa de falta de notificación levantada por Integrand no era oponible a los esposos Albert-García. El Tribunal de Apelaciones razonó que Integrand tiene una responsabilidad absoluta frente al tercero perjudicado y que la defensa de falta o tardanza en la notificación sólo era oponible al tercero perjudicado cuando éste demanda conjuntamente al asegurado y al asegurador. De esta forma, resaltó que la responsabilidad de Integrand depende exclusivamente de que la póliza cubra el riesgo.

Contrariado con la determinación del foro apelativo intermedio, Integrand comparece ante nos y sostiene que la decisión del Tribunal de Apelaciones es errada al

distan de los hechos ante nuestra consideración. Específicamente, en Graham v. Payne , 923 So. 2d 866 (La. Ct. App. 2006) se relevó a la aseguradora de la acción instada en su contra por razón de que el demandante conocía con exactitud cuál era la compañía aseguradora, y ésta se había mantenido en contacto con el demandante por razón de que no se conseguía al asegurado. No obstante, al momento de instar la demanda, el tercero perjudicado no incluyó ni notificó a la aseguradora hasta luego de que la sentencia en rebeldía dictada a su favor advino final y firme. En consecuencia, el foro de Louisiana entendió que la situación pudo ser evitada si el demandante hubiera notificado a la compañía aseguradora. Por otra parte, en Haynes v. New Orleans Archdiocesan Cemeteries, 805 So. 2d 320 (La. Ct. App. 2001), el tercero perjudicado demandó al asegurado, pero no a la aseguradora ni tampoco la notificó. El asegurado nunca compareció y se dictó sentencia en rebeldía. Luego de dictada la sentencia en rebeldía, fue notificada la compañía aseguradora.

imponerle responsabilidad absoluta e impedirle interponer frente a un tercero perjudicado la defensa de falta de notificación.

En el caso ante nuestra consideración, Integrand argumenta que tanto FJ Construction como los esposos Albert-García incumplieron con su deber de notificación, según requiere la póliza de seguro entre FJ Construction e Integrand. En consecuencia, alega que sufrió un perjuicio sustancial al no tener la oportunidad de litigar y defender al asegurado, transigir el pleito, presentar prueba adicional e, inclusive, presentar un recurso de *certiorari* ante el Tribunal Supremo. Nos expone que la reclamación no fue notificada oportunamente, debido a que desde la entablación del primer pleito contra FJ Construction hasta la notificación a Integrand mediante la presente demanda, han transcurrido sobre siete años y a meses de que la sentencia adviniera final y firme.

Por su parte, los esposos Albert-García plantean que Integrand no demostró que el incumplimiento de FJ Construction con los requisitos contractuales de notificación le haya causado daños sustanciales. Sostienen que el asegurado participó del pleito vigorosamente, expuso las defensas correspondientes, presentó una reconvención y apeló la sentencia en su contra.

Como hemos puntualizado, el Derecho aplicable no se encuentra en las posturas extremas de los foros recurridos. La falta de notificación, por sí sola, no es suficiente para relevar a la aseguradora de una póliza de ocurrencia de su responsabilidad frente a un tercero perjudicado bajo determinada póliza. Tampoco, es determinante de por sí el tiempo transcurrido desde que se entabló la reclamación en contra del asegurado. Mucho menos, la falta de notificación o la tardanza en notificar al asegurador implican, por sí sólo, un daño sustancial y material como cuestión de derecho. Lo importante es que el asegurador demuestre claramente que la falta de notificación le causó un perjuicio sustancial. Véase, <u>Pomares v. Kansas City S. Ry. Co.</u>, 474 So. 2d 976, 978 (La. Ct. App. 1985).[15]

En el caso ante nos, Integrand no alude a que entre el tercero perjudicado y el asegurado hubo colusión o

---

[15]Posteriormente, la Corte de Apelaciones de Lousiana en <u>Pomares v. Kansas City S. Ry. Co.</u>, 474 So.2d 976 (La. Ct. App. 1985) enunció con mayor claridad la norma en un caso en el cual el tercero perjudicado reclamó el pago a la aseguradora de una sentencia a su favor por $22,250. Por su parte, la compañía aseguradora levantó como defensa que nunca fue notificada de la demanda instada conforme los términos de la póliza de ocurrencia y nunca conoció de la existencia de la sentencia hasta que se solicitó su ejecución seis y medio años desde el accidente y a un año y medio de dictada la sentencia. Asimismo, levantó como defensa que no había cubierta para el vehículo involucrado. A pesar de ello, la Corte de Apelaciones concluyó que no procedía la defensa de falta de notificación, ya que no se demostró ningún perjuicio por razón de ese incumplimiento. <u>Íd.</u>, pág. 978. Véase, además, Lcdo. Rolando Cruz, <u>Derecho de Seguros</u>, San Juan, Publicaciones JTS, 1999, pág. 185.

fraude con la intención de perjudicarle. Además, como se desprende de las estipulaciones de hechos presentadas por las partes ante el Tribunal de Primera Instancia, FJ Construction contó con representación legal a través del pleito en su contra y en ningún momento se dictó sentencia en rebeldía.[16] La representación legal de FJ Construction presentó prueba documental, fotográfica, testimonial y pericial, según se desprende de la Sentencia del Tribunal de Primera Instancia dictada el 26 de febrero de 2009. Empero, al no celebrarse una vista evidenciaría, Integrand no tuvo la oportunidad de probar cómo la falta de notificación le causó un perjuicio sustancial y material, si alguno. Véase, Pomares v. Kansas City S. Ry. Co., *supra*, pág. 978.

Por ende, examinada la normativa antes expuesta, no procede desestimar la acción instada por los esposos Albert-García contra Integrand, sino devolver el caso al Tribunal de Primera Instancia para la celebración de una vista evidenciaria en la que Integrand demuestre cuál fue en efecto el patente perjuicio sustancial y material que le causó la falta de notificación. En ausencia de ello, no resultaría oponible la defensa de falta de notificación frente al tercero perjudicado.

---

[16]El que se dicte sentencia en rebeldía, en ciertas circunstancias, podría constituir un daño sustancial y material al asegurador. *Véase, por ejemplo*: Haynes v. New Orleans Archdiocesan Cemeteries, 805 So.2d 320, 324 (La. Ct. App. 2001); Auster Oil & Gas, Inc. v. Stream, 891 F.2d 570, 579 (5th Cir. 1990); Hallman v. Marquette Casualty Co., 149 So.2d 131, 132 (La. Ct. App. 1963).

**V**

Por los fundamentos antes expuestos, se revoca la Sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para los procedimientos ulteriores consistentes con esta Opinión.


                              Luis F. Estrella Martínez
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Félix Albert Rodríguez,
Lydia García Peña y
la Sociedad Legal de Gananciales

    Recurridos

        v.                          CC-2014-826      Certiorari

Integrand Assurance Company

    Peticionaria


                            SENTENCIA


    San Juan, Puerto Rico, a 9 de septiembre de 2016.

        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la Sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para los procedimientos ulteriores consistentes con esta Opinión.

        Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Feliberti Cintrón concurre sin opinión escrita. La Jueza Presidenta Oronoz Rodríguez emitió una opinión disidente a la cual se unió la Juez Asociada señora Rodríguez Rodríguez.


                        Juan Ernesto Dávila Rivera
                        Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Félix Albert Rodríguez, Lydia
García Peña y la Sociedad
Legal de Gananciales

  Recurridos

          v.

Integrand Assurance Company

  Peticionaria

CC-2014-826   *Certiorari*

Opinión disidente emitida por la Jueza Presidenta Oronoz Rodríguez a la cual se une la Juez Asociada señora Rodríguez Rodríguez

En San Juan, Puerto Rico, a 9 de septiembre de 2016.

Los hechos que dieron lugar a la controversia ante nuestra consideración se resumen adecuadamente en la Opinión del Tribunal, por lo que procederé a exponer los fundamentos que motivan mi disenso.

El Art. 20.030 del Código de Seguros, 26 LPRA sec. 2003, establece que la persona que sufra daños y perjuicios tendrá la opción de presentar una acción directa contra el asegurador conforme a los términos y limitaciones de la póliza. Esa acción se podrá ejercitar contra el asegurador solamente o contra éste y el asegurado conjuntamente. Según lo reconoce y esboza la propia Opinión del Tribunal, esa acción está **"sujeta a las condiciones de la póliza o**

**contrato y a las defensas que pudieran alegarse por el asegurador en acción directa instada por el asegurado".**[17] Op. Mayoritaria, pág. 11.

Ese perjudicado también tiene la opción de presentar una demanda en contra del asegurado únicamente. Sobre esa acción, el Art. 20.030 del Código de Seguros, _supra_, establece que: "[s]i el perjudicado entablara demanda contra el asegurado solamente, no se estimará por ello que se le prive, _subrogándose en los derechos del asegurado con arreglo a la póliza_, del derecho de sostener acción contra el asegurador y cobrarle luego de obtener sentencia firme contra el asegurado". (Énfasis suplido).

Esta cláusula faculta a un perjudicado que obtuvo una sentencia a su favor, a subrogarse en los derechos del asegurado y entablar una acción contra el asegurador para que sufrague los daños otorgados en la sentencia. Por lo tanto, la aseguradora, en este pleito independiente, podrá levantar _todas_ las defensas que tendría contra el asegurado, incluyendo la falta de notificación. Ello pues, por definición, la subrogación implica que el tercero perjudicado no puede tener mejor derecho frente a la aseguradora que el propio asegurado.

El dictamen mayoritario intenta evadir las consecuencias naturales de la subrogación mediante una interpretación

---

[17] Según la Opinión del Tribunal, los derechos del asegurador variarán dependiendo de si la parte perjudicada presenta una acción directa contra el asegurador (independientemente de si incluye al asegurado o no) o si la presenta únicamente contra el asegurado y luego le cobra la sentencia al asegurador. En la primera el asegurador puede levantar defensas que normalmente opondría contra el asegurado y en la segunda alternativa no.

desacertada del estatuto. Así, la Opinión dispone que *subrogarse conforme a los términos de la póliza* lo que implica es que "la responsabilidad del asegurador no será mayor que la pactada en la póliza de seguro ni surgirá en caso de que el asegurado no haya incurrido en actos u omisiones culposas o negligentes". Véase Op. Mayoritaria, pág. 14, citando a <u>Trigo v. The Travelers Ins. Co.</u>, 91 DPR 868, 875 (1965).[18] No obstante, no se expone ningún fundamento válido o convincente para limitar el significado de esa frase únicamente a lo que indica la Opinión. No hay argumentos válidos para disponer que *subrogarse* en la posición de otro no implica además que el perjudicado tendrá que enfrentar todas las defensas que el asegurado hubiera enfrentado frente al asegurador.

Según hemos explicado, el fin primordial del contrato de seguros es *proteger al asegurado* "contra la responsabilidad civil en la que pueda incurrir ante terceros por actos de los que sea legalmente responsable". <u>Quiñones López v. Manzano Pozas</u>, 141 DPR 139, 153 (1996), citando a J. Castelo Matrán, <u>Diccionario Mapfre de Seguros</u>, Ed. Mapfre, 1988, pág. 264. Es decir, existe principalmente para beneficio del asegurado, no de terceros. Así, es al asegurado a quien en última instancia le corresponde decidir si activa la protección que le brinda su póliza de seguro. De no hacerlo carga con las consecuencias de su inacción.

---

[18] Dicho caso es distinguible pues en esa ocasión no estaba ante nuestra consideración los efectos de la subrogación entre la aseguradora y el tercero perjudicado.

Ante una situación fáctica como la que nos ocupa resulta contrario a derecho, además de injusto, responsabilizar a Integrand Assurance Company por el pago de una sentencia dictada en un pleito en el cual no se le permitió aportar a la defensa o transigir la reclamación, en clara contravención a los términos de la póliza y las nociones más elementales del debido proceso. Lo anterior cobra aún más relieve cuando del expediente surge que ambas partes conocían de la existencia de la póliza antes de la celebración del juicio y, aun así, optaron por no unir a la aseguradora como parte en el litigio.

El argumento de la mayoría de que no se puede dejar desprovisto a un perjudicado que no tiene control sobre si el asegurado notifica o no al asegurador no tiene mérito. Un demandante siempre puede, y en un caso de daños y perjuicios debe, indagar en el descubrimiento de prueba sobre si existe una póliza que cubra la ocurrencia. Puede además traer al pleito a un asegurador de nombre desconocido en lo que obtiene toda la información. Lo que no debe ocurrir es que dos partes se beneficien de su inacción, falta de diligencia e incumplimiento con las cláusulas claras de un contrato válido en perjuicio de otro.

El perjudicado tendrá además la opción de ir solo contra el causante del daño y posteriormente contra su asegurador, como ocurrió en este caso. No obstante, en esas situaciones no tendrá más derechos que el asegurado ni el asegurador tendrá menos derechos o defensas de las que tendría contra el asegurado.

Por último, el dictamen que emite hoy una mayoría de este Tribunal tiene el efecto práctico de anular una cláusula válidamente pactada entre la aseguradora y su asegurado. Peor aún, la Opinión mayoritaria fomenta el incumplimiento deliberado con el deber de notificación toda vez que admite la adopción de estrategias de litigio centradas en la marginación de la aseguradora.[19] Crea además un entramado impreciso y complicado, donde el asegurador deberá establecer que sufrió un perjuicio –algo bastante obvio- presentando prueba que siempre será hipotética.[20]

Por los fundamentos antes expuestos, revocaría el dictamen del foro intermedio y reinstalaría en su totalidad la sentencia del Tribunal de Primera Instancia.


                                    Maite D. Oronoz Rodríguez
                                         Jueza Presidenta

---

[19] ¿Qué incentivo puede tener ahora un demandado para notificarle un incidente a su aseguradora? ¿Qué demandante optaría ahora por llevar una reclamación contra una aseguradora si claramente le va a convenir instarla solamente contra el asegurado y luego cobrarle al asegurador?
[20] Difícilmente el asegurador podrá probar que de haber tenido la oportunidad de defenderse hubiera llegado a un acuerdo transaccional, o que hubiese presentado una mejor defensa y, por ende, hubiese conseguido una sentencia de menor cantidad.